How does any of this entitle you to mandamus? Well, we don't know what the arguments are. We don't know what he's going to present. We don't even know what he's going to do. He hasn't done anything. How can your entitlement to a writ be clear and conspicuous of something that's never happened? The argument is that even if evidence of sentencing consequences never comes in, even if the defendant decides not to propose it, the district court excludes it for some reason. I'm sorry? Or if the district court excludes it for some reason, which we would think would be proper, the defendant's arguments for nullification go beyond the evidence of sentencing consequences. The case law seems to allow a little wiggle room for jury nullification. The case law contemplates that there may be some situations where the outcome can come in. How does that fit in with the entitlement to mandamus? In other words, is it so clear that we ought to issue the writ? Your Honor, I think there is wiggle room on sentencing consequences. This court has said that there might theoretically be possible circumstances where a judge could allow the introduction of evidence related to sentencing consequences. However, it's also made clear that that evidence can't come in to support jury nullification. And I disagree with the premise of your question, namely that there is wiggle room on allowing arguments for nullification. Well, I don't know that there is wiggle room on allowing it, but there is wiggle room in that it happens. There are cases where it happens. Usually it's in a different context. I don't know that there's a case where a court says, you can do it. Correct. And I don't think . . . And I've never seen anything like this. I've never seen a charge like this on top of facts like this. So you're putting us in a very difficult . . . at least you're putting me in a very difficult position. With all due respect, Your Honor, I'm not sure that all of the facts are before this court. I certainly know they're not before the district court, and so we didn't present them to this court because they're not in the record yet. We are pretrial, and we are talking about a defendant who carried on a year-long relationship with a 14 to 15-year-old girl and created child pornography as a result of that hands-on contact with a 14-year-old girl. We have not presented to the district court, and the district court hasn't heard from this young girl, hasn't heard from her parents, hasn't heard from her guardian, hasn't seen the evidence, hasn't heard about the defendant's history and characteristics, and some of the aggravating factors surrounding this relationship. We haven't put those in the record. I'm not going to discuss them here, but I can tell you . . . Does Judge Underhill know any of this? He does not know all of it, Your Honor. What I have just said to you is what Judge Underhill knows. Because we were trying not to present this evidence. A lot of it isn't relevant to the elements of the offense, but it is certainly information that we would present to the district . . . I believe there's a footnote in the defendant's brief with some of the details. Was that before Judge Underhill? The specifics, I don't think . . . I don't remember exactly what the footnote was in the defendant's brief and what he referenced. I will note that the defendant has been charged in state court with threatening. This relationship went on for a year. I'm trying to be careful . . . . . . that it was consensual. Is that not right? Your Honor . . . It can't be consensual when you're a 14-year-old, can it? No. I can say this. We were not going to put on any evidence that there was any sort of coercion or force. We didn't want to suggest to the jury that the victim had not participated in this willingly, notwithstanding her absence of consent. In terms of the video, to avoid any suggestion that the jury might get from viewing the video. But, of course, a 14-year-old girl can't consent. But, there's a difference between consent and forcible. Correct. A 14-year-old can't consent. Can't. Correct. There's no suggestion that this was forcible. And we have never said that, no. Correct. But, in terms of the other facts surrounding the case, what we would hope is that the district judge would wait until he gets all of the evidence, until he hears the evidence at sentencing, and hears our presentation at sentencing, before determining that this case involving hands-on contact with a 14-year-old girl . . . How do you respond to . . . Go ahead. How do you respond to the argument or the notion that a jury in our system has some right to do justice, show mercy, in a situation where there's a mandatory minimum? If it's not told that there is a mandatory minimum, how can it really fulfill its duty and role? Well, Your Honor, I think this Court and Thomas said that while it may have the ability to do that, it is something that we should prevent when we can. The jury certainly can, right? Because, juries return general verdicts and we don't inquire about the basis. And so, they can decide. But, when a judge has the ability to prevent a jury from violating their oaths, then the judge should do that. Because, this Court and Thomas and the Supreme Court have said that jury nullification, while it may happen, is not something that we should encourage. It leads down a path to lawlessness. Because, in some cases, while we might think that jury nullification is good in some cases, we might have different ideas about which cases those are going to be good in. And, as this Court and Thomas pointed out, sometimes jury nullification can have bad consequences. Because, once you unmoor the jury from the law and the evidence, then you don't have rule of law. But, suppose, for example, the minimum mandatory was 50 years. What would you have Judge Underhill do? Just sit on his hands? Well, Your Honor, I would hope that he would wait until he heard the evidence. I don't think that, at this point, given the constitutional role of the judiciary and the constitutional role of the executive branch in bringing charges, and Congress, quite frankly, in setting the penalties, if Congress determined that a particular offense required a mandatory minimum penalty, it is up to the executive to make decisions. And, we are firmly behind this prosecution. We do not feel it is an overreach, and feel that Congress intended to reach conduct involving hands-on contact with a minor that resulted in the creation of child pornography. You seem to be suggesting in your brief that Judge Underhill is shading his evidentiary rulings because of his dislike of the case. Is that accurate? I don't think we suggested that he was shading his evidentiary rulings. You seem to be suggesting that there's no basis for this evidence of the mandatory minimums coming in. None has been articulated other than nullification. And, if that's the case, this should be a no-brainer, is what you're saying, right? I do believe that. I also believe that he expressed his views very forcefully below that this case calls for jury nullification, and entered an order to that effect on the docket to allow the defendant to argue. Is it ethical for a judge to be making evidentiary rulings based on his or her subjective views of the value of the case? Well, Your Honor, I don't want to pine on judicial ethics. That's not my specialty. I do know that we expect and hope judges to follow the law, and we believe that these rulings are erroneous, and that the district court is misguided and should have excluded this evidence. And we fully acknowledge that the defendant might, on some un-as-yet expounded theory, offer some reason to introduce sentencing consequences. I haven't heard it yet. He has never offered any theory that is anything beyond jury nullification. And also, regardless of whether that evidence comes in, the district court's order allows defense counsel to argue for nullification on whatever theory he wants, that this is an overreach, that Congress didn't intend to touch this conduct, that the federal case is a stalking horse for the state case. All of those arguments are permissible under the court's order, regardless of whether sentencing consequences evidence comes in. Thank you. We'll hear from the other side. Good morning. My name is Norm Pattis. I represent Yehudi Manzano, both here in the underlying district court action and in the underlying state court action. I've defended sex offenses for a quarter of a century, and this is the only case that got me up in the middle of the night crying and led me to consider tendering my law license over the outrage of it all. There is a lot to be said, and I share the government's frustration in what is and is not on the record at this point. But what is abundantly clear is that Judge Underhill has not given me a blanket pass to do whatever I want in that jury. What do you plan to do in your opening? Are you going to open on nullification? We don't customarily give opening statements, and I don't intend to address it. As I understand the ruling, I sought four forms of relief. I sought voir dire on the topic, which the judge denied. I sought a charge, which the judge denied. I filed a motion in limine for permission to put on sentencing consequences, which the judge did not grant, but said if I can lay the appropriate foundation, he'll let it in. I want to come back to that because usually that's what motion is limine for. You lay the foundation or you proffer a foundation. I didn't want to . . . And the judge rules. Here he said, well, you don't have to tell me maybe if something will come to you. Well, that's not what he said. But I want to get to the fourth one. What was the fourth one you said? The fourth is that permission to argue nullification. That one was granted, right? What he said was if I offer that evidence and if I choose to make that argument, he will not stand in the way of it. The minute order specifically says the motion is granted to the extent it seeks permission to argue for jury nullification. So he's giving you permission to argue jury nullification. It may or may not be an empty argument depending on the evidence. Squarely barred by the law of our circuit. I beg your pardon? Isn't that line of argument squarely barred by the law of our circuit? Not in any case I've read. I don't know how we got from Sparf to that assertion. Sparf arose in the context of a capital, a maritime capital case where an LIO was sought and the court held, no, there's not sufficient grounds. It's the role of the jury to decide. You can't have juries disregard things. In Thomas, in Paban Cruz, in Paluzzi, other issues arose, but this circuit has never addressed counsel's Sixth Amendment right to argue as he or she sees fit. And the government has acknowledged as much in its brief. So I do intend to argue nullification, and there will be an evidentiary foundation. It's not before you. I don't want to, but you will learn. What's an evidentiary foundation for nullification? There is none per se. Today there is an evidentiary foundation about the motive of the victim in this case, her interest in the outcome. The video in question is a shot of a young woman engaged in flagrante delecto with a man whose face is not identifiable. However, a ring is identifiable. That ring was seized pursuant to a state warrant associated with the defendant. Her testimony is required to identify that. On a web page she posted the government's press release in this and twirled about the mandatory minimum that he faces. This after having sought to extort him for half the income from his business and seeking to break up his marriage. I intend to get into that. If I get that, if I get that, then I'll be able to argue. Ladies and gentlemen of the jury, you heard of it. I'm sorry. She posted. On Facebook. On Facebook a document of the government's. A press release. A press release of the government's that sets forth the mandatory minimum. Right. And so in my view, I didn't want to have to, you know, I don't want to use writ practice here as a discovery vehicle for the government. But since they're saying I can't do it, there it is. And try to stop me. Her interest in the outcome is always, is always relevant. It's never collateral. And I intend to cross-examine her on that. If I get that foundation, then I will be able to argue if the judge permits me. Ladies and gentlemen, you've heard distribution and transportation of child pornography. Maybe, I don't know if it's a matter of historic knowledge that I can attribute to the jury, but let's face some facts here. The age of consent in the United States until the 1880s was as low as nine in Maryland and not as high as 16 in any of the states. That's not going to get you anywhere. You're arguing that the age of consent should be nine? No. I'm not sure where you're going with that. I'll tell you where I'm going. The law has changed. This was not a rape. This was. It still, she was incapable of giving consent at the age of 14. This was not forcible and this was not what Congress had in your. This isn't the defense of the underlying state case. This is a distribution and production of pornography. He got the phone via interstate commerce and bounced it into the cloud. No one saw it but her, him, and the investigating agents. Is this what Congress had in mind when it sought to eliminate commercial distribution of this stuff? And I'll argue that it's not. I see I've exceeded my time. Thank you. We'll hear from Amicus. Thank you, Your Honor. May it please the court, John Gleeson, counsel for Judge Underhill. These arguments place in stark relief why Judge Underhill asked to appear through counsel as Amicus. Let me start with a procedural point. I suggest that this is a much more interesting argument if the government were right about what happened below. That is, if Judge Underhill had in fact ruled that . . . What about the minute order? The minute order says the motion is granted to the extent that counsel can argue jury notification. Is there any case that says a court can grant permission to do that? The conceded . . . that's what the minute order says. At the time in the courtroom, the judge made it clear that it was conditional on him receiving into evidence. Judge Underhill wrote a letter to this court making it crystal clear that he had not yet decided to allow evidence of mandatory minimums into the case. But there's a difference between mandatory minimums and nullification. Understood. He said, and this is I think from the transcript on October 29th, that he was simply allowing the defense to argue as he chooses to argue. And that with the minute entry seems to suggest that you can argue nullification. And immediately after that, Your Honor, and then later that afternoon, he made it clear that he would only allow the argument about nullification if he allowed into evidence of the mandatory minimum the fact that the sentencing consequences of a conviction. And in his letter to this court, he said, the government mistakenly asserts that I have ruled the evidence of the mandatory minimum will be admitted. Several times I emphasized that if the evidence were admitted . . . What does he need to make that ruling? It seems to me that this is a ruling that's being deferred in order to induce the government to change its charging policies. No, I'll suggest to you that what he needs is precisely the context that the government has told you we don't yet have. But, I mean, defense counsel indicated that the intention is to argue nullification. That's the basis for allowing this in, to allow him to argue nullification. And Judge Underhill has made it clear that that will only happen if he receives evidence of the mandatory minimums. And he has explicitly stated that he hasn't decided if that will occur. But the evidence of the mandatory minimums is being offered so that counsel can argue nullification. Well, that's not what the record reflects. What's the basis then for offering the mandatory minimums? The judge has indicated, and you've heard arguments of counsel, and we don't really have a full record, that it might come in, for example, to impeach one of the government witnesses, government agents. Might come in to impeach the alleged complainant if indeed she testifies, as the government says she will. What if we were to determine that, in fact, the record shows that it's being offered solely for purposes of nullification? Well, if you determine that . . . You disagree, I know, but if you determine that . . . No, no. Then this is not one of the extreme and drastic, extraordinary cases that would warrant mandamus relief. And here's why, Judge. Judge Parker has pointed out that with some foundation, this district judge is stunned by the fifteen-year mandatory minimum and stunned by the application of this statute to this conduct. Maybe his being stunned is understandable, but if we let this go, what about future cases? What if there's another case where a judge is stunned, but without proper justification, but he allows nullification in those circumstances? Shouldn't we have some concern about where this can go? In other words, aren't we letting judges be lawless? No. If, in fact, and we'll assume for a second this case is postured in a way where the merits of the mandamus relief ought to be addressed, I'll suggest to you it's not, but we're past that. This is a case where Judge Underhill has charted a course, if this happens, that is consistent with every decision of this Court and the Supreme Court. He knows he will not be a break on this government overreaching that he's perceived. He knows from the decisions of this Court, including Thomas and the Supreme Court cases cited in our brief, that the jury has a power to act as a break on the government overreaching, but no right, and he intends to do exactly . . . It seems to me just the cases that the judge doesn't like, he'll allow nullifications, and for the ones that he's okay with, no nullification? Well, I've already identified one, Judge, and that is a deployment of a very harsh mandatory minimum to a fact . . . What about really high guidelines? If a judge thinks these guidelines are too high, is that a basis for allowing nullification, or a judge just doesn't really like that we have criminalized certain drugs? Then that judge allows nullifications, and the judge down the hall doesn't allow an argument for nullification? Well, I'm perfectly willing to concede that if you change the underlying facts of the case, it might change the outcome. The question is whether . . . You're suggesting we basically just say nullification is? The jury gets to decide whether or not this is a case that should have been brought, whether it's a just case. So it's all or nothing, it seems to be what the arguments are. But you're saying that there's room for discretion here, and I'm not sure this cabins that discretion. And I assume I can answer notwithstanding the . . . Yes, what I'm saying is on this undeveloped record, conceitedly undeveloped, we don't know how the case will progress. You should not preclude the possibility that there might be a legitimate exercise of discretion on Judge Underhill's part to allow counsel . . . Judge Underhill . . . counsel to argue for nullification. Judge Underhill is going to do everything he's been told to do. He's going to tell the jury it can't nullify. It must follow the law. It has to ignore the punishments. He's going to . . . he's looking for a way . . . I think this is what you should expect from district judges. He sees what he thinks is an injustice. And he's thinking of charting a course consistent with every controlling precedent . . . and consistent with the fact that juries have this power and have it for this precise purpose. You seem to be saying that the jury is going to be allowed to be told explicitly about this power in those cases where the judge thinks there's an injustice. Isn't that what you just said? I'm suggesting that among the cases in which the judge would have discretion to allow counsel to argue it . . . Judge is going to forbid it. Right. Allow . . . But he's not going to allow counsel to do it in cases where he doesn't think there's an injustice, right? Well, he's going to exercise . . . judges will exercise discretion. District judges do that all the time. This, I'll suggest to you, is if there's a case in which a judge has the discretion to permit counsel to argue for jury nullification . . . and it's a judgment call because the judge is going to give instructions that says the jury can't do what he asks . . . consistent with precedent of this court and the Supreme Court. But, if there's a case . . . I'm sorry, Judge. No, I'm sorry. If there's a case in which such discretion is properly exercised, I'll suggest to you this is it. But, how do we review when it isn't properly exercised? In other words, you're saying we've got to wait until this trial is underway. We've got to wait until basically the jury is in the box and half the trial is in the can. With . . . At that point, we want them coming, running to us with a mandamus? No. With this . . . How do we assess whether the judge abused his discretion in allowing a nullification argument to go to the jury? Well, one way . . . and this goes back to the procedural point . . . One . . . you can only get mandamus relief if the ruling below forecloses the relief you seek here. That hasn't happened. What could easily happen is Judge Underhill could decide, I'm not allowing evidence of mandatory minimums. Therefore, you can't argue, Mr. Patus, your jury nullification. Then, you're going to get to review this, if there's a conviction, on the direct appeal of this case. What if the judge allows nullification to be argued and there's an acquittal? Then, they have no relief at all, right? So, you're saying they would have to run up here in the middle of trial, right? No, I'm not saying that, Judge. It happens all the time. You were a district judge. Sometimes, they move in limine for a conscious avoidance charge and the judge says no. Sometimes, they move in limine for an order saying you can't cross my agent on the fact that another judge decided that he was not credible in another case. Judge says, no, I'm going to allow that cross. They think they might get an acquittal, but that doesn't entitle them to come run in here for mandamus relief. Mandamus relief is limited to extreme, drastic situations involving extraordinary cases. Not every time the government gets a pretrial ruling or a mid-trial ruling, which goes against them, which might produce an acquittal. It's just not that. The relief is not available in those circumstances. Thank you. We will reserve.